IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| CHARLES D. HAMILTON, TRUSTEE OF THE CHARLES D. HAMILTON REVOCABLE TRUST DATED JULY 15, 1995; CHARLES D. HAMILTON AND BRETT BRUNER, TRUSTEES OF THE REACLCO, INC. CHARITABLE REMAINDER TRUST DATED JULY 9, 2004; CHARLES D. HAMILTON, TRUSTEE OF THE CHARLES D. HAMILTON CHARITABLE REMAINDER TRUST; and REALCO, INC., Appellees, vs. TRY US, LLC and THOMAS J. O'NEAL, TRUSTEE FOR THE BANKRUPTCY ESTATE OF TRY US, LLC, Appellants. | Case No. 12-1476-CV-W-ODS |

ORDER AND OPINION AFFIRMING FINAL DECISION OF BANKRUPTCY COURT

This is an appeal from the Bankruptcy Court's[1] entry of summary judgment determining the validity and an amount of a legal claim against the Debtor, Try Us, LLC. Debtor and the Trustee of the bankruptcy estate appeal, contending the Bankruptcy Court lacked authority under Article III of the Constitution to render a decision. The Court disagrees, and affirms the Bankruptcy Court's decision.

---

[1] The Honorable Arthur B. Federman, Chief Bankruptcy Judge for this district.

I.  BACKGROUND

Debtor is a Nevada limited liability company.  In 2005, it purchased two mobile home parks and other property from Realco, Inc.[2]  As part of the transaction the parties executed a Property Purchase Agreement, and Debtor executed a Promissory Note and Deed of Trust.  However, Debtor allegedly failed to make payments, leading Realco to file suit against Debtor in the Circuit Court of Pulaski County, Missouri.  The case presented two claims: Count I was a claim on the promissory note and Count II asserted unjust enrichment.

The suit was still pending when Debtor filed its voluntary Chapter 11 bankruptcy Petition in March 2012.  In mid-May, Debtor removed Realco's suit pursuant to 28 U.S.C. § 1452, which permits removal of suits to federal court if the court "has jurisdiction of such claim or cause of action" under the Bankruptcy Code.  In its Notice of Removal, Debtor acknowledged the suit would "significantly affect the administration of the estate and involve the following core proceedings," including "the allowance or disallowance of claims against the estate" and "the determination of the status and priority of liens on property of the estate" and further consented to the entry of final orders and judgments by the Bankruptcy Court in the event any claims asserted in the suit were deemed to not be core proceedings.  Notice of Removal, ¶¶ 9, 11.  On June 5, Realco filed a Proof of Claim premised on the same allegations asserted in the state court suit.  Ten days later, Realco sought summary judgment on Count I; the matter was fully briefed and, on September 21, the Bankruptcy Court (1) granted Realco's Motion for Summary Judgment, (2) found Debtor owed Realco $949,306.21 plus attorney fees, and (3) directed Realco to submit information so the attorney fees could be ascertained.

Thomas J. O'Neal was appointed as Trustee of the bankruptcy estate on October 31, 2013.  On November 2, the Bankruptcy Court entered a formal judgment determining Debtor owed Realco a total of $1,022,549.20, representing the amount due

---

[2]A complete list of the Appellees appears in the caption; for simplicity's sake they will be referred to collectively as Realco.  The precise relationship between the Appellees is not relevant to the issues on appeal and will not be detailed herein.

on the Promissory Note plus attorney fees. The Trustee filed a Motion to Set Aside Judgment, but the motion was denied.

## II. DISCUSSION

### A. Application of Article III

#### 1. Article III's Application to "Core Proceedings"

Appellants concede the Bankruptcy Court had statutory authority to decide the validity and amount of Realco's claim. Congress granted bankruptcy courts the authority to "hear and determine all cases under title 11 and all core proceedings arising under title11," 28 U.S.C. § 157(b)(1), then set forth a non-exhaustive list of core proceedings. As applicable to this case, core proceedings include "allowance or disallowance of claims against the estate." Id. § 157(b)(2)(B). While Congress has granted authority to bankruptcy courts, Appellants insist this Congressional grant of authority violates Article III of the Constitution, which Appellants –relying principally on the Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011) – interpret as requiring an Article III judge to decide all claims arising under common law. The Court disagrees with Appellant's interpretation.

To properly frame the discussion, it is necessary to recount the Supreme Court's decision. Vickie Lynn Marshall ("Vickie") was married to J. Howard Marshall II ("J. Howard"). She filed suit in state court against her stepson, E. Pierce Marshall ("Pierce"), alleging Pierce fraudulently induced J. Howard to sign a living trust that provided her with no benefits even though J. Howard allegedly intended to give her half of his property. J. Howard passed away, and thereafter Vickie filed a petition for bankruptcy. Pierce filed a complaint in that proceeding, contending Vickie had defamed him; he also filed a proof of claim. Vickie defended herself on the merits and filed a counterclaim asserting Pierce tortiously interfered with her expected gift from J. Howard. 131 S. Ct. at 2601. The bankruptcy court granted Vickie summary judgment on the counterclaim; thereafter, the case took its first trip to the Supreme Court, which reversed

3

for reasons not relevant to this proceeding.  See Marshall v. Marshall, 547 U.S. 293 (2006).  On remand the Court of Appeals reversed, agreeing with Pierce that Article III did not permit a non-Article III decisionmaker (such as a bankruptcy judge) to decide a non-core proceeding.  While a different provision of section 157 provides counterclaims asserted by the debtor are "core proceedings," see 28 U.S.C. § 157(b)(2)(C), the Ninth Circuit held that Congress' determination of what constitutes a core proceeding was insufficient to satisfy the requirements of Article III as set forth in the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982).  Specifically, the Ninth Circuit determined that a debtor's counterclaim could be a core proceeding arising under the Bankruptcy Code only if the counterclaim was so closely related to the creditor's proof of claim that resolution of the counterclaim was necessary to resolve the creditor's claim against the estate.  Stern, 131 S. Ct. at 2602.

In affirming the Ninth Circuit, the *Stern* Court acknowledged that Vickie's counterclaim constituted a core proceeding as defined in the statute.  Id. at 2604.  The Court "conclude[d] that § 157(b)(2)(C) permits the Bankruptcy Court to enter final judgment on Vickie's counterclaim, [but] Article III of the Constitution does not."  Id. at 2608.  In reaching this conclusion the Court differentiated two of its prior cases – *Katchen v. Landy* [3] and *Langenkamp v. Culp* [4] – that permitted bankruptcy judges (or, as they were known at the time of *Katchen*, bankruptcy referees) to decide matters directly related to claims asserted by creditors.  The critical differences described by the *Stern* Court were (1) the close relationship between the issues to be decided and the validity of a debt asserted against the bankruptcy estate and (2) the creditor – the party invoking Article III's protections – filed a Proof of Claim and thereby agreed the Bankruptcy Court would be the decisionmaker.  Stern, 131 S. Ct. at 2616-17.  In contrast, (1) Vickie's counterclaim bore no relationship to any claim asserted against the bankruptcy estate, and (2) Pierce's submission of a proof of claim did not obviate Article III's application to issues unrelated to that claim.  Id. at 2617-18.  In the aftermath of *Stern*, the Eighth Circuit has relied on these distinctions to hold that *Katchen* and

---

[3] 382 U.S. 323 (1966).

[4] 498 U.S. 42 (1990) (per curiam).

4

*Langenkamp* were not overruled.  See Pearson Educ., Inc v. Almgren, 685 F.3d 691, 695 (8th Cir. 2012).

This case is closer to *Katchen* and *Langenkamp* than it is to *Stern*. Realco has a claim against the bankruptcy estate, and it has filed a Proof of Claim. The Bankruptcy Court is constitutionally empowered to resolve issues related to claims against the bankruptcy estate, and resolution of Realco's claim required the Bankruptcy Court to determine factual and legal issues arising not only from Realco's contract claim but also those arising from Debtor's defenses. Not only were the issues decided necessary to the resolution of the claim, in contrast to *Stern* the Bankruptcy Court did not decide any issues that were unrelated or unnecessary to resolution of Realco's claim. Finally (and as will be discussed below), it was Debtor that brought the dispute to the Bankruptcy Court and asked the Bankruptcy Court for a resolution.

Appellants focus on the fact that Realco's claim is predicated on common law. While it is true that Realco's claim is a common law claim that is not dependent on statutory authority (i.e., it is "the stuff of the traditional actions at common law tried by the courts at Westminster in 1789," Stern, 131 S. Ct. at 2609 (quotation omitted)), this observation is not determinative. The importance of the observation is this: Congress can establish non-Article III decisionmakers to resolve claims or causes of action it creates. The fact that Congress did not create the cause of action asserted by Realco removes this possibility, but it does not mean that section 157(b)(2)(B) is not constitutional under *Katchen* and *Langenkamp*. Accepting Appellants' argument requires concluding *Katchen* and *Langenkamp* are no longer valid, which is contrary to both *Stern* and *Almgren*. Accepting Appellants' argument also leads to the conclusion that Bankruptcy Courts could not resolve *any* disputes about claims. If this remarkably broad proposition were true one would expect *Stern* to have said so; instead, the Court described the issue before it as "narrow." Stern, 131 S. Ct. at 2620.

The Court concludes Article III permits bankruptcy judges to adjudicate legal and factual disputes related to claims filed against a bankruptcy estate. The issues raised by Realco's suit directly related to its claim against the bankruptcy estate. Therefore, the Bankruptcy Court's resolution of Realco's claim (and Debtor's defenses) did not violate Article III of the Constitution.

5

## 2. Article III's Application to Public Rights

While not specifically discussed by the parties, another line of analysis may salvage section 157(b)(2)(B)'s constitutionality. The Supreme Court has long held that resolution of public rights need not be committed to an Article III tribunal. E.g., Stern, 131 S. Ct. at 2612. The notion of what constitutes a public right has evolved over time; while "public rights" are not limited to actions where the Government is a party,

> [t]he Court has continued . . . to limit the exception to cases in which the claim at issue derives from a federal regulatory scheme, or in which resolution of the claim by an expert government agency is deemed essential to a limited regulatory objective within the agency's authority. In other words, it is still the case that what makes a right "public" rather than private is that the right is integrally related to particular federal government action.

Id. at 2613.

In 1982, the Court first discussed the possibility that a debtor invoking protections and rights under the Bankruptcy Code to restructure its relations with creditors constituted a public right. The case at hand involved a contract claim asserted by the bankruptcy debtor against a party that had not filed a proof of claim. Without explicitly deciding the issue, the Court concluded that even if the restructuring of debtor/creditor relationships constituted a public right, the debtor's "right to recover contract damages to augment its estate" remained a private right. Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 71 (1982) (plurality opinion). The possibility that the restructuring of debtor/creditor relations might qualify as a "public right" has had a mixed and uncertain pedigree since Northern Pipeline. Compare Thomas v. Union Carbide Agricultural Products Co., 473 U.S. 568, 586 (8th Cir. 1985) with Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 56 n.11 (1989). Stern also left the issue unanswered. 131 S. Ct. at 2614 n.7.

The importance of the issue is this: one of the distinguishing hallmarks of the case at bar is that Debtor – not a creditor brought unwillingly into the proceeding – is invoking Article III. This feature distinguishes the prior cases on the topic. This leads to the following question: when Debtor sought protection under the Bankruptcy Code,

6

and sought to reorganize its relationship with creditors, was Debtor invoking a public right?  If so, Article III does not apply.  It may be that this analysis simply leads to the justification for letting Article I bankruptcy courts decide truly core proceedings, it may be that this analysis stands independent of the issue of core proceedings – and it may be that this analysis is not viable because the Supreme Court does not believe seeking rights and remedies under bankruptcy law is a public right.

The Court raises the issue for two reasons.  First, as this appeal relates to jurisdiction, the Court has a special obligation to consider all aspects of the issue.  Second, given the significance (and implications) of the relief Appellants seek, it is an issue the Court believes should be fully considered before eviscerating the heretofore usual and traditional role of bankruptcy courts.  That said, the Court declines to address the issue because the parties have not addressed it and there is no need to solicit additional briefing in light of the discussion in Part II.A.1, above.

### B.  Validity of Debtor's Consent

Appellants concede even if Article III applies, the Bankruptcy Court's judgment is valid if the parties consented to entry of judgment by the Bankruptcy Court.  Cf. Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 848-49 (1986); Abramowitz v. Palmer, 999 F.2d 1274, 1279 (8th Cir. 1993).  Here, Appellants attempt to distinguish themselves: the Trustee contends that even though the Debtor consented to the Bankruptcy Court's entry of judgment, that consent was not binding on the subsequently-appointed Trustee.  The Court disagrees.  Bankruptcy trustees are bound by any acts of the debtor-in-possession (and any judicial actions taken thereon) that occur before the Trustee is appointed.  "We cannot entertain any suggestion to the contrary, as the result would be chaos among debtors-in-possession and their creditors.  Creditors must be able to deal freely with debtors-in-possession, within the confines of the bankruptcy laws, without fear of retribution or reversal at the hands of a later appointed trustee."  Armstrong v. Norwest Bank, Minneapolis, N.A., 964 F.2d 797, 801 (8th Cir. 1992).  While the Trustee could be regarded as attempting to "revoke" the consent before the Bankruptcy Court entered a final judgment, Appellants offer no

7

reason to distinguish Debtor's previously-expressed consent from any other pre-appointment action, stipulation, or filing.  The Trustee stood in the Debtor's shoes; the Bankruptcy Court was not required to let the Debtor revoke its consent, and for that reason was also not required to let the Trustee revoke Debtor's consent.

### C.  The Option of De Novo Review

Realco correctly argues that any constitutional error can be cured if the Court treats the Bankruptcy Court's decision as a recommendation and reviews it de novo.  Doing so would require affording the parties an opportunity to file objections and arguments regarding the propriety of accepting the Bankruptcy Court's recommendation, which would prolong the ultimate conclusion of this matter.  Moreover, pursuing this course as an alternative option would place the District Court on a course of regularly reviewing the Bankruptcy Court's claims determinations in a manner not contemplated by Congress without actually concluding such actions are constitutionally necessary.

The Court should conduct de novo review if and only if Congress' will (as expressed in section 157(b)(2)) is determined to be unconstitutional.  Given the Court's holdings above (and given the lack of any arguments about the merits of the Bankruptcy Court's decision), the Court discerns no need to review the merits under any standard of review.

### III.  CONCLUSION

The Court concludes that Article III of the Constitution permits bankruptcy judges to issue final and binding decisions regarding the validity and amount of claims made against a bankruptcy estate.  In this case, both parties agree the matter decided was of such a nature: Debtor made such a representation when justifying removal of the matter from state court, and Realco made such a representation when it filed its Proof of Claim.  Therefore, Article III permitted the Bankruptcy Court to resolve the validity and amount of Debtor's monetary obligation to this creditor.  Finally, even if Article III would not have

8

Case 4:12-cv-01487-ODS   Document 14   Filed 05/01/13   Page 8 of 9

permitted Congress to grant such authority to a non-Article III decisionmaker, the Debtor's consent to a final decision from the Bankruptcy Court resolves any constitutional issue.

      The Bankruptcy Court's decision is affirmed.
IT IS SO ORDERED.

|  |  |
|---|---|
| DATE: May 1, 2013 | /s/ Ortrie D. Smith<br>ORTRIE D. SMITH, SENIOR JUDGE<br>UNITED STATES DISTRICT COURT |